UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NANYAMHKA L. BRYANT *ex rel.* M.K.,

                                         Plaintiff,               Case # 17-CV-6662-FPG

v.                                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

## INTRODUCTION

Nanyamhka L. Bryant ("Plaintiff") brings this action on behalf of her minor son ("M.K.") pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his Supplemental Security Income ("SSI") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 9, 12. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On October 23, 2013, Plaintiff applied for SSI with the Social Security Administration ("the SSA") on M.K.'s behalf. Tr. 204-09.[1] She alleged that M.K. had been disabled since April 1, 2013, due to attention deficit hyperactivity disorder ("ADHD"), anger issues, depression, and poor left eye vision. Tr. 228. On April 21, 2016, Plaintiff and M.K. appeared and testified at a hearing before Administrative Law Judge Brian Kane ("the ALJ"). Tr. 41-77. On June 21, 2016,

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

the ALJ issued a decision finding that M.K. was not disabled within the meaning of the Act. Tr. 15-30. On July 26, 2017, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Commissioner's decision is not *de novo* and that the Commissioner's findings are conclusive if supported by substantial evidence).

### II. Child Disability Standard

An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is "severe," meaning that it causes "more than minimal functional limitations." *Id.* § 416.924(c). If the child does not have a severe impairment or combination of impairments, he or she is not disabled. If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.924(d). If the child's impairment meets or medically or functionally equals the criteria of the Listings, he or she is disabled.

To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ assesses the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the listings, the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme limitation in a domain when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

3

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed M.K.'s benefits application under the process described above. At step one, the ALJ found that M.K. had not engaged in substantial gainful activity since the application date. Tr. 18. At step two, the ALJ found that M.K. has oppositional defiant disorder, disruptive behavior disorder, and adjustment disorder with mixed disturbance of emotions and conduct, which constitute severe impairments. Tr. 18-19. At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal a Listings impairment. Tr. 19.

Next, the ALJ found that M.K.'s impairments, alone or in combination, do not functionally equal a Listings impairment. Tr. 19-29. Specifically, as to the six domains of functioning, the ALJ found that M.K. had marked limitation in Interacting and Relating with Others; less than marked limitation in Acquiring and Using Information, Attending and Completing Tasks, Caring for Yourself, and Health and Physical Well-Being; and no limitation in Moving About and Manipulating Objects. Tr. 23-29. Accordingly, the ALJ determined that M.K. was not disabled. Tr. 30.

**II.     Analysis**

M.K. argues that the Commissioner's decision should be reversed because the ALJ improperly weighed the medical opinions, which left his conclusions in the Acquiring and Using Information, Attending and Completing Tasks, and Caring for Yourself domains unsupported by substantial evidence. ECF No. 9-1 at 13-21; ECF No. 13. The Court addresses these arguments in turn below.

### A.  The ALJ Properly Evaluated the Medical Opinions.

The ALJ must "evaluate every medical opinion [he] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998) (citation omitted); *see also* 20 C.F.R. § 416.927(c).  Unless a treating source's opinion is given controlling weight, the ALJ considers several factors to decide how much weight to give to a medical opinion.  They are: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion.  *Id.* § 416.927(c)(1)-(6).

The ALJ does not have to apply every factor, but he must sufficiently explain his reasoning behind the weight given to the medical opinions.  *See Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 204 (S.D.N.Y. 2018) ("We note that while the ALJ did not apply each factor in [the regulations,] the ALJ was under no obligation to do so."); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("[Claimant] challenges the ALJ's failure to review explicitly each factor provided in [the regulations].  We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

Plaintiff argues that the ALJ erred by not giving significant weight to any of the opinion evidence.  ECF No. 91- at 13-19.  Specifically, Plaintiff asserts that the ALJ provided insufficient reasoning for affording only "little weight" to the opinions of therapist Mary Ellen Dance and consultative examiner Yu-Ying Lin, Ph.D.[2]  *Id.*

---

[2] Plaintiff also asserts that the ALJ made an "inconsistent" finding when he afforded "some weight" to psychiatrist Olivia Chiang's opinion that assessed mild limitation in Interacting and Relating with Others but concluded that M.K. had marked limitation in that domain.  ECF No. 9-1 at 14.  The ALJ's conclusions do not have to "perfectly correspond" with any of the medical source opinions cited in his decision; rather, the ALJ is "entitled to weigh all of

### 1. Ms. Dance's Opinion

On October 3, 2014, Ms. Dance completed a Mental Residual Functional Capacity Questionnaire, which is a form that evaluates an adult's ability to perform mental work-related functions.[3] Tr. 567-72. The ALJ credited Ms. Dance's assessment that M.K. had no problems maintaining attention and concentration for two-hour segments, carrying out and understanding simple instructions, and remembering work-like procedures. Tr. 21 (citing Tr. 569).

In light of the adult form used, however, the ALJ discounted Ms. Dance's opinion in part because "the context is inappropriate when applied to a childhood disability claim." Tr. 21. Specifically, the ALJ gave only "little weight" to Ms. Dance's opinions that M.K. would have difficulty maintaining a schedule, working without supervision, making work-related decisions, completing a normal workday and workweek, interacting with the public, and maintaining socially appropriate behavior. *Id.* In accordance with the regulations, the ALJ was entitled to consider "any factors . . . which tend to support or contradict" Ms. Dance's opinion, like the fact that her opinion related to adult instead of childhood disability. 20 C.F.R. § 416.927(c)(6). Although some of Ms. Dance's findings on the adult form might illuminate M.K.'s ability to function in the various domains, it was not unreasonable for the ALJ to reject portions of her opinion because they were specific to evaluating an adult's ability to perform work-related activities.

The ALJ also discounted Ms. Dance's opinion because, "although [she is] a treating source, the records show she only met with [M.K.] and [Plaintiff] once for an intake appointment" and

---

the evidence available" to make determinations "consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). Plaintiff does not dispute the ALJ's finding of marked limitation in the Interacting and Relating with Others domain, and the Court declines to find error where the ALJ found M.K. *more* limited than Dr. Chiang said he was.

[3] The Court notes that, as a therapist, Ms. Dance is an "other source" rather than an "acceptable medical source" and therefore her opinion was not entitled to controlling weight. *Nelson v. Comm'r of Soc. Sec.*, No. 6:17-CV-06543 EAW, 2018 WL 6844172, at *5 (W.D.N.Y. Dec. 18, 2018); *see also* 20 C.F.R. § 416.913(a), (d)(1) (effective Sept. 3, 2013 to Mar. 26, 2017); S.S.R. 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006).

"some information provided by [Plaintiff] was not consistent with the actual medical records." *Id.* (citing Tr. 596-611). In accordance with the regulations, the ALJ was entitled to consider the length, nature, and extent of Ms. Dance and M.K.'s treatment relationship. 20 C.F.R. § 416.927(c)(2). The record reveals that M.K. became a patient of Liberty Resources Behavioral Health Clinic on September 4, 2014, and that he was supposed to meet with Ms. Dance at least once a week. Tr. 598, 602. Just over six months later, on March 27, 2015, the Clinic discharged M.K. because he missed eight appointments. Tr. 606-08. Thus, the ALJ reasonably discounted Ms. Dance's opinion in light of her brief treatment relationship with M.K. *See* 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated [the claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight [the ALJ] will give to the source's medical opinion.").

The ALJ was also entitled to discount Ms. Dance's opinion because it relied on information Plaintiff provided which, as the ALJ pointed out several times in his decision, was inconsistent with the record. *See* 20 C.F.R. § 416.927(c)(4) (the ALJ will give more weight to an opinion that is consistent with the record as a whole). For example, Plaintiff continuously insisted that M.K. had ADHD and asked providers to diagnose him and prescribe medication, even though they explained to her that he did not meet the ADHD criteria. Tr. 20, 493, 504, 513. Plaintiff also reported that M.K.'s school frequently called her about M.K.'s poor behavior, but school personnel denied calling and expressed no concerns about M.K. except that he had attendance issues. Tr. 22, 493-94, 503-04. When an ALJ finds the claimant's allegations inconsistent with the evidence, he may discount the opinion of a medical source who relied on those subjective complaints. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) ("Because the ALJ declined to credit [the plaintiff], the ALJ was entitled to discount [the treating physician]'s opinions insofar as they relied on [the

7

plaintiff]'s subjective complaints.") (citation omitted); *see also Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (summary order) (finding that the ALJ was not required to give controlling weight to treating physician's opinion where "it was unsupported by the objective medical evidence" and "based on [the plaintiff's] subjective complaints").

Accordingly, for all the reasons stated, the Court finds that the ALJ did not err when he weighed Ms. Dance's opinion.

### 2. Dr. Lin's Opinion

On January 24, 2015, Dr. Lin evaluated M.K. and diagnosed him with oppositional defiant disorder, ADHD, and destructive mood dysregulation disorder. Tr. 548. Dr. Lin opined that M.K. can attend to, follow, and understand age-appropriate directions, complete age-appropriate tasks, and ask questions and request assistance in an age-appropriate manner; has mild limitation in his ability to learn in accordance to cognitive functioning; has moderate limitation in his ability to recognize danger and take necessary precautions; and has marked limitation in his ability to maintain appropriate social behaviors, respond appropriately to changes in the environment, and interact adequately with peers and adults. Tr. 548. Dr. Lin's report indicates that M.K. was uncooperative during the examination and that Plaintiff relayed most of the information. Tr. 546. M.K.'s attention, concentration, and recent and remote memory skills "[a]ppeared to be impaired due to distractibility and possibly not putting in any effort." Tr. 547. M.K. reported no interests or hobbies, even though other record evidence indicates that he enjoys basketball, video games, and watching television. Tr. 23, 29, 548, 563, 596, 600, 604, 663, 667.

The ALJ afforded "little weight" to Dr. Lin's opinion. Tr. 23. Specifically, the ALJ rejected Dr. Lin's ADHD diagnosis because "treating sources have screened [M.K.] for ADHD on multiple occasions" and found that he does not meet the requisite criteria. *Id.* The ALJ was entitled

8

to discount Dr. Lin's ADHD diagnosis because it was inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c)(4). The ALJ also noted that Dr. Lin "relied primarily on [Plaintiff]'s reports during [M.K.'s] evaluation but . . . the school did not see the same behaviors . . . and had no academic concerns but for truancy." *Id.* The ALJ properly discounted Dr. Lin's opinion on this basis because, as discussed above, he found Plaintiff's allegations inconsistent with the evidence. The ALJ also found Dr. Lin's findings "less valid" because Dr. Lin indicated that M.K. did not put forth a complete effort at the evaluation. Tr. 23. This was proper because the ALJ can discount an opinion that lacks relevant evidence or a valid explanation, *see* 20 C.F.R. § 416.927(c)(3); clearly, M.K.'s failure to cooperate detracts from Dr. Lin's findings and weakens the support for his opinion.

Accordingly, for all the reasons stated, the Court finds that the ALJ did not err when he weighed Dr. Lin's opinion.

### B. The ALJ's Findings in the Functional Equivalence Domains are Supported by Substantial Evidence.

As noted above, the Court must determine "whether the SSA's conclusions were supported by substantial evidence in the record[.]" *Talavera*, 697 F.3d at 151 (citing 42 U.S.C. § 405(g)) (other citation omitted). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran*, 569 F.3d at 112 (citations omitted). The Court is not concerned with whether substantial evidence supports the claimant's position; rather, the Court must decide whether substantial evidence supports the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). "Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* at 58-59 (internal quotation marks and citation omitted) (emphasis in original). It is the ALJ's job to

resolve conflicting record evidence and the Court must defer to that resolution. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence").

Plaintiff argues that that ALJ's failure to properly evaluate Ms. Dance and Dr. Lin's opinions left his findings in the Acquiring and Using Information, Attending and Completing Tasks, and Caring for Yourself domains unsupported by substantial evidence. ECF No. 9-1 at 19-21. As discussed above, the Court finds that the ALJ did not err when he evaluated those opinions. Thus, for the reasons that follow, the Court finds that the ALJ's conclusions in these domains are supported by substantial evidence.

### 1. Acquiring and Using Information Domain

In the Acquiring and Using Information domain, the ALJ considers how well the child can acquire or learn information and use the information that he or she has learned. 20 C.F.R. § 416.926a(g) (effective June 12, 2015 to Oct. 6, 2016)[4]; *see also* S.S.R. 09-3p, 2009 WL 396025, (S.S.A. Feb. 17, 2009). Examples of limitations in this domain include a lack of understanding of words about space, size, or time; an inability to rhyme; difficulty recalling important things learned in school yesterday; difficulty solving mathematics questions or computing arithmetic answers; and speaking only in short, simple sentences and difficulty explaining oneself. 20 C.F.R. § 416.926a(g)(3)(i)-(v). These examples may differ from the child's actual limitations in this domain and do not necessarily describe a marked or extreme limitation. *Id.*

---

[4] The ALJ ruled on M.K.'s benefits application on June 21, 2016; therefore, this version of the regulation applies to this case.

The ALJ found that M.K. has a less than marked limitation in the Acquiring and Using Information domain. Tr. 23-25. Specifically, the ALJ pointed out that M.K. is in regular education and has never required special education services, did well academically in the 2011-2012 school year, and was referred to as a "bright boy" whose attendance issues and poor choices impacted his schooling. Tr. 22, 24-25 (citing Tr. 332). M.K. was absent 38 days and tardy 42 days in the 2012-2013 school year and absent 83 days and tardy 10 days in the 2014-2015 school year. Tr. 22, 25 (citing Tr. 314, 325). M.K.'s 2012-2013 report card indicates minimal progress due to his lack of regular attendance. Tr. 25 (citing Tr. 326). The ALJ also pointed out that, in May 2013, the school nurse indicated that she was unaware that M.K. had any behavioral or academic problems until Plaintiff dropped off disability paperwork at the school. *Id.* (citing Tr. 720). The ALJ also noted that Child Protective Services got involved due to M.K.'s truancy, but the record reveals that his academics improved once he maintained regular attendance and was put on probation. Tr. 22, 25 (referring to Tr. 493-94, 776, 786).

As for the opinion evidence relevant to this domain, one of M.K.'s teachers indicated that he had no problems in this area and that his functioning appeared age-appropriate.[5] Tr. 23, 251. The ALJ also credited Ms. Dance's opinion that M.K. had no problems carrying out and understanding simple instructions and remembering work-like procedures. Tr. 21 (citing Tr. 569). Similarly, Dr. Lin opined that M.K. can attend to, follow, and understand age-appropriate directions and complete age-appropriate tasks, and that he has only mild limitation in his ability to learn. Tr. 23, 548.

Plaintiff argues that other record evidence, especially limitations opined by Ms. Dance and Dr. Lin, supports a more severe restriction in this domain; however, the Court finds the ALJ's

---

[5] The ALJ gave only "little weight" to this assessment because it is incomplete, unsigned, and undated; however, he noted that the teacher's findings were consistent with other school records and treating source notes. Tr. 23.

11

conclusion supported by substantial evidence. In accordance with the regulations, the ALJ discussed and cited evidence demonstrating how well M.K. can acquire or learn information and use the information he has learned, and he reasonably concluded that M.K.'s attendance issues, not his impairments, tend to impact his abilities in this domain. Thus, for all the reasons stated, the Court finds no error in this domain.

## 2. Attending and Completing Tasks Domain

In the Attending and Completing Tasks domain, the ALJ considers how well the child can focus, maintain attention, and begin, carry through, and finish activities, including the pace at which he performs activities and the ease with which he changes activities. 20 C.F.R. § 416.926a(h) (effective June 12, 2015 to Oct. 6, 2016); *see also* S.S.R. 09-4p, 2009 WL 396033 (S.S.A. Feb. 18, 2009). The ALJ also assesses the child's ability to change focus after completing a task, avoid impulsive thinking and acting, organize, plan ahead, prioritize competing tasks, and manage his time. S.S.R. 09-4p, 2009 WL 396033, at *2.

Examples of limitations in this domain include being easily startled, distracted, or overreactive to sounds, sights, movements, or touch; being slow to focus on or failing to complete activities of interest like games or art projects; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, including ones the child is capable of completing; and requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3)(i)-(v). These examples may differ from the child's actual limitations in this domain and do not necessarily describe a marked or extreme limitation. *Id.*

The ALJ found that M.K. has a less than marked limitation in the Attending and Completing Tasks domain. Tr. 25-26. Specifically, the ALJ pointed out that M.K.'s providers had not diagnosed him with ADHD. Tr. 26; *see also* Tr. 20, 23. He also noted that, although

Plaintiff reported very severe and significant limitations in this domain, school personnel did not corroborate her statements or observe the same alleged behaviors at school. Tr. 26 (citing Tr. 524, 730); *see also* Tr. 22. The ALJ acknowledged that M.K.'s significant attendance issues have impacted his ability to achieve academic success. Tr. 26. The ALJ also credited Ms. Dance's opinion that M.K. had no problems maintaining attention and concentration for two-hour segments. Tr. 21 (citing Tr. 569).

Plaintiff argues that other record evidence, especially limitations opined by Ms. Dance and Dr. Lin, supports a more severe restriction in this domain; however, the Court finds the ALJ's conclusion supported by substantial evidence. The ALJ discussed and cited evidence demonstrating that M.K. did not have ADHD,[6] which would undoubtedly impact this domain, and that Plaintiff's allegations in this domain were inconsistent with the record. The ALJ reasonably concluded that M.K.'s attendance issues, not his impairments, tend to impact his abilities in this domain. Thus, for all the reasons stated, the Court finds no error in this domain.

### 3. Caring for Yourself Domain

In the Caring for Yourself domain, the ALJ considers the child's ability to maintain a healthy emotional and physical state, including how well he appropriately meets his physical and emotional wants and needs; how he copes with stress and changes in his environment; and whether he takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k) (effective June 12, 2015 to Oct. 6, 2016); *see also* S.S.R. 09-7p, 2009 WL 396029 (S.S.A. Feb. 17, 2009). Examples of limitations in this domain include placing non-nutritive or inedible objects in one's

---

[6] The Court is aware that an ADHD diagnosis is not required to demonstrate a marked limitation in the Attending and Completing Tasks domain. *See* S.S.R. 09-4p, 2009 WL 396033, at *3 n.12 (noting that the SSA provides many examples in this domain involving children with ADHD, but that "many other kinds of mental disorders can cause limitations in the ability to attend and to complete tasks"). This ALJ properly used this information, however, as one piece of evidence to support his finding in this domain.

mouth; using self-soothing activities that demonstrate developmental regression (like thumb sucking) or exhibiting restrictive or stereotyped mannerisms (like body rocking); an inability to appropriately dress or bathe oneself; engaging in self-injurious behavior (like suicidal thoughts or actions) or ignoring safety rules; failing to spontaneously pursue enjoyable activities or interests; and disturbed eating or sleeping patterns. 20 C.F.R. § 416.926a(k)(3)(i)-(vi). These examples may differ from the child's actual limitations in this domain and do not necessarily describe a marked or extreme limitation. *Id.*

The ALJ found that M.K. has a less than marked limitation in the Caring for Yourself domain. Tr. 28-29. Specifically, the ALJ acknowledged M.K.'s mental health treatment for his anger. Tr. 29. He also recognized that M.K. had been mental health arrested "for suicidal gestures without an intent to follow through, when mad at his mom or family members." *Id.* (citing Tr. 578, 588, 632); *see also* Tr. 21 (discussing the record evidence related to suicide in greater detail). The ALJ also noted that M.K. was involved in a group fight at school in October 2015. Tr. 21 (citing Tr. 296). M.K. stated that "he was jumped and only fought back when attacked," but school records revealed that M.K. "was associated with others in attacking another student." Tr. 21 (citing Tr. 300, 766).

Plaintiff argues that other record evidence supports greater limitations in this domain. Specifically, Plaintiff asserts that the ALJ should have taken M.K.'s suicidal threats more seriously and that those incidents demonstrate a marked or extreme limitation in this domain. While the Court does not take M.K.'s suicidal ideations lightly, it notes that such behavior is just one example of a limitation in this domain. 20 C.F.R. § 416.926a(k)(3)(iv). Moreover, the regulations specifically indicate that this example does not necessarily describe a marked or extreme limitation. *Id.* It was up to the ALJ to weigh all the evidence related to M.K.'s suicidal tendencies

14

and determine how that evidence impacted the Caring for Yourself domain and, based on the record, the ALJ reasonably concluded that M.K. did not intend to act on his suicidal gestures. Thus, for all the reasons stated, the Court finds no error in this domain.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 30, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court